**Mingo WILLOUGHBY, Movant–Appellant,**

v.

**STATE of Missouri, Respondent– Respondent.**

**No. 24332.**

Missouri Court of Appeals, Southern District, Division Two.

June 26, 2002.

Petition for Rehearing and Transfer Denied
July 18, 2002.

Application for Transfer Denied
Aug. 27, 2002.

Irene Karns, of Columbia, Mo., for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen L. Kramer, Asst. Attorney General, for Respondent.

JAMES K. PREWITT, Judge.

Movant was initially charged with the class A felony of murder in the first degree and armed-criminal action, which was later reduced to the class B felony of voluntary manslaughter in exchange for a plea of guilty. The trial court accepted Movant's plea and sentenced him to fifteen years' imprisonment.

After sentencing, Movant filed a timely *pro se* motion under Rule 24.035, alleging, among other things, that his guilty plea was unknowing in that he relied on misinformation from counsel that he would be eligible for parole in two-and-a-half years. An amended motion was timely filed by appointed counsel, and an evidentiary hearing was held January 12, 2001. The motion court overruled Movant's postconviction motion, finding "that Movant was not deprived of his right of zealous representation, ... nor deprived of due process of law." This appeal followed.

■ Movant presents one point relied on, contending that his guilty plea was "unknowing in that it was based on incorrect information from defense counsel about parole eligibility[,]" and had he known he would be required "to serve almost twice as much time as counsel advised before being eligible for parole, he would have insisted on going to trial."

Movant contends that his claim that he would have proceeded to trial had he been correctly informed of the parole eligibility is supported by the record in that: (1) the record "shows that he had a viable claim of self-defense"; (2) "the evidence of record would also have supported an instruction on involuntary manslaughter"; (3) had the jury found Appellant "guilty of voluntary manslaughter, and imposed a sentence for armed criminal action, the total sentence imposed may not have totaled fifteen years"; and (4) considering Movant's young age (twenty-two at the time of the plea), "the difference between two and a half and five years to a man in his early twenties may well be compelling."

In exchange for his plea of guilty, Movant had been offered a reduction in the original charges from murder in the first degree to either: 1) murder in the second degree, a class A felony, with a ten-year sentence; or 2) voluntary manslaughter, a class B felony, with a fifteen-year sentence. Movant chose voluntary manslaughter, believing he would be eligible for parole in only two-and-a-half to three years, as opposed to serving eight-and-a-half years before being eligible for parole for a conviction of murder in the second degree.

Plea counsel testified at Movant's evidentiary hearing and affirmed that he had advised Movant that under a conviction of murder in the second degree Movant would be required to serve at least 85% of the sentence, and it would mean less time served if Movant pled to voluntary manslaughter with a fifteen-year sentence than to plead guilty to second degree murder with a ten-year sentence. In addition, plea counsel testified that in his negotiations with the prosecuting attorney he had been told that the prosecutor had talked with a parole officer who said Movant would only be required to serve two-and-a-half years. He believed that the prosecutor was unwilling to make Movant a better offer because of the possibility that Movant would serve such a short time.

In his testimony, counsel stated that he did not believe he was incompetent in rep-

resenting his client "but if I made a mistake I don't think he should suffer for that mistake." His account of the plea negotiations and what he told defendant was consistent with Movant's testimony. Counsel further testified that he did not discuss with Movant whether he thought that the thirty-month prediction by prosecutor sounded unreasonable or unlikely.

Movant testified that plea counsel had explained to him the 85% rule and he understood that a guilty plea to voluntary manslaughter, with a fifteen-year sentence, would get him "out from under the statutory 85% clause." He stated that counsel had advised him there was no statutory minimum for a conviction of voluntary manslaughter but counsel's opinion was that Movant would have to serve one-third of the sentence. Movant was informed by counsel of the prosecutor's prediction that he would serve only thirty months and Movant testified that he relied on this information in making his decision to plead guilty to voluntary manslaughter. Movant further stated that it was after entering the Department of Corrections that he learned that felony convictions under classes A and B require a minimum time served of one-third of the original sentence, and had he known this information, he would have taken his chances at trial.

The motion court found "it unreasonable for Movant to believe he would be released from a 15 year voluntary manslaughter charge in 2½ years.... [C]ases cited by movant require both a reasonable belief and a positive representation upon which movant is entitled to rely. Neither is found present here."

Upon review of the motion court's denial of postconviction relief, this court is limited to a determination of whether the motion court's findings, conclusions and judgment are clearly erroneous. *Jones v. State,* 966 S.W.2d 340, 342 (Mo.App.1998). As the findings of the motion court are presumed to be correct, they are deemed clearly erroneous only if, after a review of the entire record, this Court is left with the definite and firm impression that a mistake has been made. *Id.* "Absent an abuse of discretion, this Court defers to the trial court's determination as to whether a prisoner's guilty plea was voluntary." *Jenkins v. State,* 9 S.W.3d 705, 708 (Mo.App.1999).

To prevail on a claim of ineffective assistance of counsel in connection with the entry of a guilty plea, the defendant must show that, but for counsel's unprofessional errors, there is a reasonable probability that defendant would not have pled guilty and would have insisted on going to trial. *Torrence v. State,* 861 S.W.2d 149, 150 (Mo.App.1993). The defendant has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Beal v. State,* 51 S.W.3d 109, 111 (Mo.App.2001).

The effectiveness of counsel is relevant only to the extent it affected the voluntariness of the plea. *Darris v. State,* 897 S.W.2d 48, 50 (Mo.App.1995). As the validity of a guilty plea depends on whether it was entered voluntarily and intelligently, the defendant must enter the plea with knowledge of the direct consequences of the plea. *Reynolds v. State,* 994 S.W.2d 944, 946 (Mo.banc 1999). "[E]ligibility for parole is considered to be a collateral consequence of the plea; thus, information about eligibility for parole is not among those direct consequences about which a defendant must be informed in order for the plea to be entered voluntarily and intelligently." *Id.*

However, "[w]hile neither the court nor counsel is obligated to inform a defendant about parole eligibility, erroneous advice about it can affect the voluntariness of the plea." *Hao v. State,* 67 S.W.3d 661, 663 (Mo.App.2002). "Mistaken beliefs about sentencing may affect a defendant's

ability to knowingly enter a guilty plea if: 1) the mistake is reasonable, and 2) the mistake is based upon a positive representation upon which movant is entitled to rely." *Johnson v. State,* 921 S.W.2d 48, 50 (Mo.App.1996). "When a movant claims to have suffered from a mistaken belief about his sentence, we look at the record of the guilty plea to determine whether that belief is reasonable." *McCall v. State,* 771 S.W.2d 357, 359 (Mo.App.1989). "Only when it appears that a movant's belief is based on positive representations upon which a movant is entitled to rely will we conclude a movant's mistaken belief is reasonable." *Id.*

Movant's Petition to Enter a Plea of Guilty was signed by Movant and his plea counsel and filed with the trial court. In pertinent part, the Petition read:

11. My lawyer informed me that the range of punishment which the law provides is _5_ to _15_ years imprisonment,

· · ·,

· · · ·

13. I declare that no officer or agent of any branch of government (federal, state or local) has promised or suggested that I will receive a lighter sentence, or probation, or any other form of leniency if I plead GUILTY, except as follows: None[.]

The Prosecuting Attorney promised that if I plead GUILTY, he will do the following: Dismiss all other charges against me, if any, including CR499–1663T.

(Here insert any promises or concessions made to the defendant or to his attorney. If none, insert, "No promises or concessions made to me or my attorney.)

If anyone else made any promises or suggestions, except as noted in the previous sentences, I know that he had no authority to do it. I know that the sentence I will receive is solely a matter within the control of the Judge. I hope to receive lenience, but I am prepared to accept my punishment permitted by law which the Court sees fit to impose. However, I respectfully request the Court to consider, in mitigation of punishment, that I have voluntarily entered a PLEA OF GUILTY.

· · · ·

In addition, Movant, his counsel and "Prosecutor Making Agreement" signed a "Memorandum of Plea Bargain" that provided, in part:

THE AGREEMENT: Defendant to enter plea of guilty to the charge of Voluntary Manslaughter

· · · ·

Defendant to be sentenced to fifteen (15) years in the Department of Corrections.

· · · ·

I, the undersigned Defendant, state that I have read and fully understand the above Memorandum of Plea Bargain. My attorney has also fully explained it to me. I understand that the Prosecutor is not going to do anything further in my behalf in this case other than as set forth above. I further state that I have discussed this plea bargain with my attorney and have freely, knowingly, and voluntarily agreed to this plea bargain. I have been advised, and I do understand, that the Court is not compelled to accept this plea bargain and is not compelled to follow the recommendation of the Prosecutor, my attorney, or any other person. There has been no force or threats of any type used against me to make me agree to this plea bargain. I am agreeing to this plea bargain of my own free will.

Further, there was testimony from the Movant during the plea hearing which included the following exchange between the court and Movant:

Q. [By the court] Were any other promises made to you to induce you to enter a plea of guilty?

A. No.

■ "Even if plea counsel did incorrectly advise Movant concerning when he would be eligible for parole, such advice does not automatically undermine the voluntariness of a guilty plea." *Jones v. State,* 966 S.W.2d 340, 343 (Mo.App.1998). *See also Torrence v. State,* 861 S.W.2d 149, 150 (Mo.App.1993); *Blanchette v. State,* 753 S.W.2d 322, 324 (Mo.App.1988); *Reeder v. State,* 712 S.W.2d 431, 433 (Mo.App. 1986).

Under the circumstances outlined above, this Court cannot say that the trial court abused its discretion in determining that the guilty plea was voluntary or that we have a definite and firm impression that the trial court made a mistake. We determine that the motion court's findings, conclusions and judgment were not clearly erroneous.

The judgment is affirmed.

PARRISH, J., and RAHMEYER, J., concur.